O

# United States District Court
# Central District of California

| | |
|---|---|
| DANIEL ALVAREZ,<br><br>        Plaintiff,<br><br>    v.<br><br>LOS ANGELES COUNTY et al.,<br><br>        Defendants. | Case № 2:24-cv-01035-ODW (MARx)<br><br>**ORDER GRANTING DEFENDANT'S SPECIAL MOTION TO STRIKE, OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT [31]** |

## I.    INTRODUCTION

Plaintiff Daniel Alvarez brings this action against Defendants Los Angeles County (the "County"), Los Angeles County Children and Family Services ("LACFS"), and Catie Reay. (First Am. Compl. ("FAC"), ECF No. 28.) Reay moves to strike the First Amended Complaint as asserted against her in its entirety pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, or, in the alternative, to dismiss each cause of action asserted against her pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. Strike & Dismiss ("Motion" or "Mot."), ECF No. 31.) For the following reasons, the Court **GRANTS** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Alvarez, a Hispanic homosexual male, holds a foster parent license issued by LACFS. (FAC ¶¶ 14, 16.) In 2023, Alvarez became the foster parent of a Caucasian baby boy. (*Id.* ¶ 15.) Excited to share his new journey into fatherhood, Alvarez posted videos of himself with his foster baby on the social media platform TikTok. (*Id.* ¶¶ 18–19.) Although Alvarez would sometimes post videos that were "a little more risqué," his foster baby never appeared in these videos. (*Id.* ¶ 20.)

Reay, who has never met Alvarez and does not know Alvarez personally, is a TikTok user who came across Alverez's TikTok videos. (*Id.* ¶¶ 21–24.) Reay did not like Alvarez's "risqué" videos or his videos with his foster baby. (*Id.* ¶¶ 25–26.) To express her distain, Reay reposted Alvarez's TikTok videos on her own TikTok account and added commentary "demonizing" Alvarez's relationship with his foster baby and stating that she feared for the baby's safety. (*Id.* ¶¶ 27–28.) After Reay's TikTok videos went "viral," she called on her viewers to contact social services regarding Alvarez's relationship with his foster baby. (*Id.* ¶¶ 29–31.)

Reay's videos and the phone calls from her viewers prompted an investigation into Alvarez's parenthood and the safety of his foster baby. (*Id.* ¶¶ 32, 34.) On or about September 22, 2023, West Hollywood Sheriff and Social Services, on behalf of LACFS, arrived at Alvarez's home, revoked his foster parent license, and removed the foster baby from his custody. (*Id.* ¶¶ 36–37.) Alvarez was not provided a hearing before LACFS revoked his foster parent license and removed the foster baby from his care. (*Id.* ¶¶ 40–41.)

Based on the above allegations, Alvarez initiated this action against the County, LACFS, and Reay. (Compl., ECF No. 1.) Alvarez asserts nine causes of action: (1) defamation against Reay; (2) violation of the Fifth Amendment's Due Process Clause against the County and LACFS; (3) violation of the Fourteenth Amendment's

---

[2] All factual references derive from the First Amended Complaint or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Equal Protection Clause against all Defendants; (4) violation of the First Amendment's Right to Free Speech against all Defendants; (5) invasion of privacy against the County and LACFS; (6) intentional infliction of emotional distress against all Defendants; (7) negligence against all Defendants; (8) negligent infliction of emotional distress against all Defendants; and (9) violation of Welfare and Institutions Code section 366.26(n) against the County and LACFS. (FAC ¶¶ 42–204.)

Reay moves to strike the First Amended Complaint under California's anti-SLAPP Statute or, in the alternative, to dismiss all claims asserted against her under Rule 12(b)(6). (Mot. 2.) The Motion is fully briefed. (Opp'n, ECF No. 35; Reply, ECF No. 36.)

### III. LEGAL STANDARD

California's anti-SLAPP statute is the frontline defense against lawsuits that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010). SLAPPs—strategic lawsuits against public participation—"are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff." *Kajima Eng'g and Constr., Inc. v. City of Los Angeles*, 95 Cal. App. 4th 921, 927 (2002). "SLAPP plaintiffs do not intend to win their suits; rather, they are filed solely for delay and distraction, and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances." *Id.* (internal citations omitted).

California's anti-SLAPP statute states,

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

3

Cal. Civ. Proc. Code § 425.16(b)(1). The statute "shall be construed broadly." *Id.* § 425.16(a); *see also Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 596 (9th Cir. 2010) ("[W]e follow the California legislature's direction that the anti-SLAPP statute be 'construed broadly.'").

A defendant can bring anti-SLAPP motions in federal court for "California state law claims asserted under either diversity jurisdiction or supplemental jurisdiction." *OneLegacy v. City of Monterey Park*, No. 2:19-cv-04911-AB (JPRx), 2019 WL 6729723, at *2 (C.D. Cal. Aug. 21, 2019). Where a federal court has jurisdiction to hear an anti-SLAPP motion, the court is bound by decisions of the California Supreme Court. *See Hilton*, 599 F.3d at 905 (federal courts evaluating claims brought under state law "must begin with the pronouncements of the state's highest court, which bind us").

"If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of [section] 425.16(c) applies." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). District courts are also to apply federal pleading standards, including granting the plaintiff leave to amend. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with [Rule] 15(a)'s policy favoring liberal amendment.").

Under Rule 12(b)(6), a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.   SPECIAL MOTION TO STRIKE

The Court first addresses the Special Motion to Strike pursuant to California's anti-SLAPP statute, then turns to the Motion to Dismiss.

Reay moves to strike the First Amended Complaint as asserted against her in its entirety under California's anti-SLAPP statute. (Mot. 2.) As a preliminary matter, California's anti-SLAPP statute "does not apply to federal law causes of action." *Hilton*, 599 F.3d at 901. Therefore, the Court applies California's anti-SLAPP statute only to the state and common law claims asserted against Reay.

Resolution of an anti-SLAPP motion "requires the court to engage in a two-step process." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the defendant must make a prima facie showing that the conduct underlying the plaintiff's cause of action, or portions of the cause of action that are asserted as grounds for relief, arises from the defendant's constitutional rights of free speech or petition. *Id.* Second, if the first prong is satisfied, the burden shifts to the plaintiff to prove that he or she has a legally sufficient claim and to show a probability that the plaintiff will prevail on the claim. *Id.*

### A.   "Arising from" Protected Activity

Reay must first make "a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). California's anti-SLAPP statute delineates four broad categories of conduct that constitute "act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ.

5

Proc. Code § 425.16(e).  Sections 425.16(e)(3) and (4) provides that protected activity under the anti-SLAPP statute incudes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest."

"On the 'arising from' requirement, the defendant must show 'the defendant's act underlying the plaintiff's cause of action [was] *itself*' a protected act." *Gaynor v. Bulen*, 19 Cal. App. 5th 864, 877 (9th Cir. 2018) (alteration and emphasis in original) (internal citations omitted) (quoting *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002)).  To determine whether the first prong of the anti-SLAPP statute is satisfied, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Navellier*, 29 Cal. 4th at 89 (emphasis in original) (citing *City of Cotati*, 29 Cal. 4th at 76–78).  The Court looks beyond the face of the complaint to determine whether the causes of action arise from protected activities.  *See Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679 (2010) ("We do not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action.")  "[C]ourts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Park v. Bd. of Tr. of Cal. State Univ.*, 2 Cal. 5th 1057, 1063 (2017).

    1.    *Claims at Issue*

Here, Alvarez asserts four state and common law causes of action against Reay, for defamation, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress.  (FAC ¶¶ 42–49, 119–66.)  These claims all arise from statements that Reay made on TikTok.  (*Id.* ¶¶ 27–31, 45, 136–37.)  Having identified the challenged causes of action and alleged activity at issue, the next inquiry is whether the activity was in furtherance of Reay's free speech rights.

*2. In Furtherance of a Right of Free Speech*

Reay argues that the statements are protected by section 425.16(e)(3), as they are statements made on TikTok, a public forum, and concern the public's interest in protecting babies from predators.[3] (Mot. 11–13.) Alternatively, Reay contends that the statements fall under section 425.16(e)(4)'s "catchall" provision, as an exercise of Reay's constitutional right of free speech in connection with an issue of public concern, specifically regarding sexual offense. (*Id.* at 13.) Alvarez argues that Reay's statements did not concern a public issue because Alvarez was not, and is not now, a sexual predator. (Opp'n 6–7.)

A public forum "traditionally has been defined as a place that is open to the public where information is freely exchanged." *Nygard v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1036 (2008) (discussing section 425.16(e)(3)). TikTok, a website accessible to the public, is a public forum for purposes of the anti-SLAPP statute. *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."); *see also Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 854 (N.D. Cal. 2020) (finding Twitter to be a public forum and collecting cases finding social media platforms such as Facebook and Instagram to be public forums). Alvarez does not dispute that TikTok is a public forum. (*See generally* Opp'n.)

California courts have described three categories of statements that address issues of public interest: (1) a statement that concerns "a person or entity in the public eye"; (2) statements that "could directly affect a large number of people beyond the direct participants"; and (3) statements that involve "a topic of widespread, public interest." *Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 621 (2019). Here, Reay

---

[3] The Court declines to address Reay's argument that the claims are based on Reay's statements to law enforcement. (Mot. 13.) The First Amended Complaint does not include allegations that Reay made statements directly to law enforcement, (*see generally* FAC), and Alvarez concedes that the claims are not based on Reay's statements to law enforcement, (Opp'n 8). Accordingly, this argument of Reay's is inapplicable.

contends her statements concern the "protection of vulnerable children from sexual predators." (Mot. 12.) "[P]reventing child sexual abuse and protecting children from sexual predators are issues of widespread public interest." *Cross v. Cooper*, 197 Cal. App. 4th 357, 375 (2011).

Alvarez argues that he was not, and is not now, a sexual predator, that he did not perform sexually inappropriate acts with his foster baby nor post such content online, and that there was no danger. (Opp'n 6–7.) But "[i]t need not be proved that a particular adult is in actuality a sexual predator in order for the matter to be a legitimate subject of discussion." *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1547 (2005). For example, in *Terry*, the plaintiff's actions with a minor gave members of the church and parents of the youth group cause for concern, leading to discussions in church meetings. *Id.* at 1548. The court in *Terry* found that, even though the police later concluded that there was insufficient evidence to show plaintiff committed any crime, *id.* at 1547, the plaintiff's actions still gave rise to an ongoing discussion about protection of children that warranted protection by the statute, *id.* at 1550. Accordingly, the court concluded the allegations arose from protected activity. *Id.* at 1551.

Based on the allegations, Reay's statements[4], on their face, concerned a public interest to protect vulnerable children from sexual predators. Accordingly, the Court finds she satisfies her burden of showing that Alvarez's first, sixth, seven, and eighth causes of actions arise from protected activity.

**B.   Reasonable Probability of Prevailing**

The burden now shifts to Alvarez to demonstrate "there is a probability that [he] will prevail on the claim." Cal. Civ. Proc. Code § 425.26(b)(1). If Alvarez fails to meet this burden, the anti-SLAPP motion must be granted and the claims dismissed. *Navellier*, 29 Cal. 4th at 89.

---

[4] The Court notes that the allegations do not specify what Reay said, verbatim, in her videos. Alvarez generally alleges that Reay "vocalized her distain," made "commentary on the videos," and alleged "that she feared for the baby's safety." (FAC ¶¶ 27–28.)

Reay confines her anti-SLAPP motion to the "legal infirmities" in the First Amended Complaint. Therefore, the Court applies the familiar standard of Rule 12(b)(6) and considers whether the First Amended Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

Reay argues that each of the four causes of action are deficient. First, she argues Alvarez's defamation claim is deficient because (1) it is time-barred, (2) Alvarez does not present a statement that is provably false, and (3) foster parenting is not a business[5] that is subject to a trade libel claim. (Mot. 14–15.) Second, she contends Alvarez's intentional infliction of emotional distress claim fails as he does not allege extreme and outrageous conduct. (*Id.* at 16.) Third, Reay argues Alvarez's negligence claim is without merit as Reay does not owe a duty to him. (*Id.* at 17.) Lastly, she contends Alvarez's negligent infliction of emotional distress fails because California law does not permit such a claim absent physical injury. (*Id.* at 18.) The Court considers each argument in turn.

### 1. First Cause of Action: Defamation

Under California law, a defamation action for libel or slander is subject to a one-year statute of limitation. Cal. Civ. Pro. Code § 340(c). A claim for defamation accrues when the defendant publishes a defamatory statement by communicating it to a third person who "understands its defamatory meaning as applied to the plaintiff." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003).

---

[5] Alvarez argues California Code of Civil Procedure section 425.17 "prohibits anti-SLAPP motions in response to certain actions against a business." (Opp'n 5.) Section 425.17 applies only if "the statement or conduct consists of representations of fact about that person's . . . business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales . . . or commercial transactions in, the person's goods or services." Cal. Civ. Proc. Code § 425.17(c)(1). But Alvarez does not allege, nor does it appear, that he runs a foster care "business." (*See generally* FAC.) Instead, Alvarez alleges he fostered the baby because it "provided an alternative outlet to fatherhood." (*Id.* ¶ 16.) Accordingly, the Court declines to address this argument.

As noted by Reay, Alvarez does not allege the date when the alleged defamation occurred. (Mot. 14; s*ee generally* FAC.) Rather than address this deficiency, Alvarez relies on the "discovery rule," arguing that the statute of limitation did not begin to run until he discovered the defamatory statement, and conclusively asserting that he filed suit within the statue of limitations. (Opp'n 8.)

The discovery rule may apply if Alvarez "pleads and proves that a reasonable investigation at [the] time [when the statute of limitations began to run] would not have revealed a factual basis for th[e] particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005). But Alvarez does not plead the date he made the discovery or whether he made any investigation. (*See generally* FAC; Opp'n.) As asserted, the allegations do not provide the Court with sufficient facts to determine when the statue of limitations began to run or when Alvarez discovered the alleged defamatory statements.

Accordingly, the Court **GRANTS** the Motion as to Alvarez's first cause of action for defamation against Reay. Although Alvarez fails to indicate in his opposition whether he can cure this deficiency, the cause of action is **STRIKEN WITH LEAVE TO AMEND**.

*2. Sixth Cause of Action: Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress, Alvarez must allege, among other things, "extreme and outrageous conduct causing [him] to suffer severe or extreme emotional distress. *The Kind & Compassionate v. City of Long Beach*, 2 Cal. App. 5th 116, 130 (2016). "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (cleaned up).

Reay argues Alvarez cannot demonstrate a probability that he will prevail on this claim because he does not plead facts showing extreme and outrageous conduct. (Mot. 16.) Alvarez alleges that Reay reposted his videos on her TikTok account, added commentary to demonize his relationship with his foster baby, and prompted

viewers to contact social services. (FAC ¶¶ 27–31.) Reay contends these allegations do not rise to the level of extreme and outrageous conduct because she displayed Alvarez's own videos, and her commentaries discussed the safety of children. (Reply 8.)

In his opposition, Alvarez provides no substantive response to Reay's argument. (*See* Opp'n 9.) Instead, he lists only the elements of a claim for intentional infliction of emotional distress. (*Id*.) Alvarez thus fails to carry his burden to demonstrate that he will prevail on this claim and appears to concede to this argument. *See Star Fabrics, Inc. v. Ross Stores, Inc.*, No. 2:17-cv-05877-PA (PLAx), 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017) ("Where a party fails to oppose arguments made in a motion, a court may find that the party has conceded those arguments or otherwise consented to granting the motion.").

Accordingly, the Court **GRANTS** the Motion and **STRIKES** Alvarez's sixth cause of action for intentional infliction of emotional distress against Reay, **WITH LEAVE TO AMEND**, to permit Alvarez to cure the deficiency.

3. *Seventh Cause of Action: Negligence*

"To state a cause of action for negligence, [Alvarez] must allege (1) [Reay] owed [him] a duty of care, (2) [Reay] breached that duty, and (3) the breach proximately caused [Alvarez's] damages or injuries." *Lueras v. BAC Home Loans Servicing, LLP*, 221 Cal. App. 4th 49, 62 (2013).

Reay moves to dismiss Alvarez's negligence claim because Alvarez fails to show that Reay owed Alvarez a duty and breached that duty. (Mot. 17.) In his opposition, Alvarez cites to inapplicable case law describing the duty of care owed by corporate officers to third parties. (Opp'n 9–10.) Alvarez further states that Reay owed a duty of care not to spread defaming rumors about him. (*Id.*)

Alvarez's argument is duplicative of his defamation claim and he offers no authority to establish the existence of a legal duty "not to spread defaming rumors." (*See generally* Opp'n.) Where, as here, "a negligence claim [is] premised on [a]

defamation claim . . . multiple courts have rejected such negligence claims as duplicative." *Harvey v. Netflix, Inc.*, No. 2:24-cv-04744-RGK (AJRx), 2024 WL 4536639, at *12 (C.D. Cal. Sept. 27, 2024), *appeal filed*, No. 24-6151 (9th Cir. Oct. 9, 2024); *see also Jacques v. Bank of Am. Corp.*, No. 1:12-cv-0821-LJO-SAB, 2014 WL 7272769, at *10 (E.D. Cal. Dec. 18, 2014) (same); *Schering Corp. v. First Databank Inc.*, No. C 07-01142 WHA, 2007 WL 1068206, at *6–7 (N.D. Cal. Apr. 10, 2007) (same). California courts have expressed concerns that permitting plaintiffs to sue in negligence when the facts "may be actionable as libel or slander," would allow plaintiffs "to seek to evade the structures of libel law and avoid the applicable defenses by framing all libel actions as negligence causes of action." *Felton v. Shaeffer*, 229 Cal. App. 3d 229, 238–39 (1991).

Accordingly, the Court **GRANTS** the Motion and **STRIKES** Alvarez's seventh cause of action against Reay as duplicative, **WITHOUT LEAVE TO AMEND**, because the Court finds Alvarez cannot plead a duty owed separate from the duty imposed by the law of defamation.

    *4.    Eighth Cause of Action: Negligent Infliction of Emotional Distress*

Lastly, Reay moves to dismiss Alvarez's eight cause of action for negligent infliction of emotional distress on the grounds that Alvarez fails to plead he was a bystander to an injury or a direct victim of a breach of duty. (Mot. 18.) Alvarez does not address this argument in his opposition and thus concedes the issue. (*See generally* Opp'n); *see also Star Fabrics*, 2017 WL 10439691, at *3.

Accordingly, the Court **GRANTS** the Motion and **STRIKES** Alvarez's eighth cause of action, **WITH LEAVE TO AMEND**, to permit Alvarez to cure the deficiency.

**C.    Conclusion—Special Motion to Strike**

As described above, Reay makes a threshold showing that the first, sixth, seventh, and eighth causes of action against her arise from protected activity, and Alvarez fails to show a probability of prevailing on any of the four claims.

Accordingly, the Court **STRIKES** Alvarez's first, sixth, and eighth causes of action, **WITH LEAVE TO AMEND**. The Court **STRIKES** Alvarez's seventh cause of action **WITHOUT LEAVE TO AMEND**.

## V. MOTION TO DISMISS

Having stricken the first, sixth, seventh, and eighth causes of action, the Court turns to the Motion to Dismiss Alvarez's remaining two federal claims against Reay.

Against Reay, Alvarez asserts his third cause of action for violation of Equal Protection under the Fourteenth Amendment and fourth cause of action for violation of his Right to Free Speech under the First Amendment. (FAC ¶¶ 77–110.) Reay moves for dismissal of these two claims on the grounds that she is not a state actor. (Mot. 16.) Alvarez argues that Reay may be liable as a joint actor. (Opp'n 9.)

The Fourth Amendment's Equal Protection Clause prohibits discriminatory action by the State, but does not protect against "private conduct, 'however discriminatory or wrongful.'" *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972). Likewise, "[t]he Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019). To determine whether a private individual's action amounts to state action, the Supreme Court has identified the following four tests: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

Alvarez contends that Reay is a state actor under the joint action test. (Opp'n 9.) The joint action test is satisfied when "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 926 (9th Cir. 2011). "A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'" *Franklin*, 312 F.2d at 445.

There is no evidence or factual allegations here to support that Reay acted in concert with the County or LACFS. Alvarez contends that Reay spread false statements and convinced her followers to contact LACFS. (Opp'n 9.) Based on this conduct alone, Alvarez leaps to the conclusion that LACFS worked with Reay to gather false information and to remove the foster baby from his care. (*Id.*) The allegations do not show that Reay had any contact with LACFS or that LACFS conspired with Reay to spread the alleged false statements. As Reay aptly notes, Reay "does not work for the government" and "is not an informant for the [Los Angeles Police Department] or [LACFS]." (Reply 7.) While LACFS may have later used Reay's videos and calls from her viewers to make a decision regarding Alvarez's ability to foster the baby, there are no facts to show that LACFS insinuated itself into Reay's TikTok posts to transform her actions into ones fairly attributable to the state.

Accordingly, the Court **DISMISSES** Alvarez's third and fourth causes of actions against Reay. This dismissal is **WITHOUT LEAVE TO AMEND** as the Court finds that "the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion. (ECF No. 31.) As described above, the Court **STRIKES** Plaintiff's first, sixth, and eighth causes of action against Reay **WITH LEAVE TO AMEND**. In addition, the Court **STRIKES** the seventh cause of action and **DISMISSES** the third and fourth causes of action against Reay, **WITHOUT LEAVE TO AMEND**.

If Plaintiff chooses to amend, he must file his Second Amended Complaint by no later than **fourteen (14) days** from the date of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing. If Plaintiff does not timely amend, this dismissal shall be deemed a dismissal with prejudice as to the first, sixth, and eighth causes of action against Reay, as of the lapse of the deadline to amend.

**IT IS SO ORDERED.**

April 22, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**