O

# United States District Court
# Central District of California

| | |
|---|---|
| DANIEL ALVAREZ,<br><br>            Plaintiff,<br><br>    v.<br><br>LOS ANGELES COUNTY et al.,<br><br>            Defendants. | Case № 2:24-cv-01035-ODW (MARx)<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES [58]** |

## I.    INTRODUCTION

On July 15, 2025, the Court dismissed all claims asserted by Plaintiff Daniel Alvarez against Defendant Catherine Reay.[1] (Order Grant Mot. Strike ("Anti-SLAPP Order"), Dkt. No. 56.) Reay now moves to recover her attorneys' fees as a prevailing party pursuant to California's anti-SLAPP (strategic lawsuits against public participation) law. (Mot. Att'ys' Fees ("Motion" or "Mot."), Dkt. No. 58). Alvarez failed to timely respond. (*See* Notice Non-Opp'n Mot. ("Notice Non-Opp'n"), Dkt. No. 62; Opp'n, Dkt. No. 63.) For the following reasons, the Court **GRANTS** the Motion.[2]

---

[1] Catherine Reay was erroneously sued as "Catie" Reay. (*See* Third Am. Compl. ("TAC"), Dkt. No. 44.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

On February 7, 2024, Alvarez initiated this action against Reay and the County of Los Angeles, bringing various claims arising from the County's removal of Alvarez's foster child. (Compl., Dkt. No. 1.) According to Alvarez, Reay caused Alvarez to lose custody of his foster child by drawing attention to his TikTok videos. (*Id.* ¶ 38.) Alvarez asserted the following causes of action against Reay: (1) defamation, (2) invasion of privacy, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. (TAC ¶¶ 53–67, 96–138.)

On December 6, 2024, Reay filed a Motion to Strike Alvarez's First Amended Complaint pursuant to California's anti-SLAPP statute. (Mot. Strike First Am. Compl., Dkt. No. 31.) On April 22, 2025, the Court granted the Motion but granted Alvarez leave to amend some of his claims against Reay. (Order Grant Mot. Strike, Dkt. No. 39.) After Alvarez amended his pleading, on June 23, 2025, Reay filed a Motion to Strike the Third Amended Complaint pursuant to California's anti-SLAPP statute. (Mot. Strike Third Am. Compl. ("Mot. Strike") 2, Dkt. No. 49.) As Reay set the hearing on her Motion to Strike for July 21, 2025, Alvarez's opposition was due on June 30, 2025. *See* C.D. Cal. L.R. 7-9. However, Alvarez failed to file an opposition brief, and on July 7, 2025, Reay filed a Notice of Non-Opposition to her Motion to Strike. (Notice Non-Opp'n Mot. Strike, Dkt. No. 54.) After considering the factors in *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995), the Court granted Reay's Motion to Strike as unopposed and dismissed all claims asserted against Reay without leave to amend. (*See generally* Anti-SLAPP Order.)

On July 28, 2025, Reay filed the instant Motion, seeking mandatory attorneys' fees under California's anti-SLAPP statute. (Mot.) Reay set the hearing on her Motion for August 25, 2025, meaning Alvarez's opposition brief was due on August 4, 2025. *See* C.D. Cal. L.R. 7-9. However, Alvarez again failed to timely file an opposition brief. On August 11, 2025, Reay filed another Notice of

Non-Opposition. (Notice Non-Opp'n.) That same day, Alvarez filed his untimely opposition brief. (*See* Opp'n.)

### III. LEGAL STANDARD

California's anti-SLAPP statute allows defendants to make a special motion to strike a claim if that claim arises from an act by defendants to further their right of petition or free speech in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1); *see also Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (concluding that the twin aims of the *Erie* doctrine "favor application of California's anti-SLAPP statute in federal cases). "[A] prevailing defendant on a special motion to strike shall be entitled to recover [her] attorney[s'] fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.")

### IV. DISCUSSION

Raey moves for attorneys' fees under California anti-SLAPP law, arguing that she is the prevailing party in this matter and that her requested fees are reasonable. (*See* Mot.)[3] Although the Motion is unopposed, the Court nonetheless considers Reay's arguments and determines the reasonableness of her requested fees. *See Refining v. S & S Fuel, Inc.*, No. 8:19-cv-01418-DOC (ADSx), 2020 WL 4355509, at *1 (C.D. Cal. May 20, 2020) (considering the merits of an unopposed motion for attorneys' fees).

---

[3] The Court disregards Alvarez's opposition as untimely and treats the Motion as unopposed. *See* C.D. Cal. L.R. 7-12. Alvarez's opposition brief was due August 4, 2025, but he filed it on August 11, 2025. Had this been his first, or even his second, untimely opposition, the Court may have considered it. However, this is the fourth time Alvarez has either untimely opposed or failed to oppose a motion. (*See* Opp'n Mot. Strike First Am. Compl., Dkt. No. 35 (filed four days late); Notice Non-Opp'n Mot. Strike; Opp'n Mot. Dismiss, Dkt. No. 57 (filed two days late).) Moreover, there is nothing in Alvarez's opposition brief for the Court to consider. Alvarez's substantive analysis consists of only two sentences: "This case is certainly not a difficult and complex case. It should not have been very difficult for Counsel to prepare any oppositions or related documents in said case." (Opp'n 2–4.) Thus, the Court does not consider Alvarez's untimely opposition brief and examines the merits of Raey's Motion without the benefit of Alvarez's arguments.

### A.  Prevailing Party

Before determining whether Reay is entitled to the attorneys' fees she seeks, the Court must first ascertain whether she was the "prevailing party" on her anti-SLAPP motion. "California courts broadly construe what constitutes a prevailing party." *Masimo Corp. v. Mindray DS USA, Inc.*, No. 8:12-cv-02206-CJC (JPRx), 2014 WL 12597114, at *1 (C.D. Cal. Jan. 2, 2014) (citation modified). "The crucial question is one of practicality; did anything of substance (technical victories notwithstanding) change in the posture of the case and the claims being lodged against the defendant after it brought the special motion to strike than were in existence beforehand." *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D Cal. 2010).

Here, Reay is properly the prevailing party. After Reay brought her second anti-SLAPP motion, which Alvarez did not oppose, the Court dismissed all of Alvarez's claims against Reay without leave to amend. (Anti-SLAPP Order 2.) As a practical matter, the order changed the "posture of the case" because Alvarez was left with no avenue to lodge more claims against Reay. *Brown*, 722 F. Supp at 1155. Moreover, even where a party fails to "oppose the [Motion to Strike]," as Alvarez failed to do here, courts still presume the movant is the prevailing party. *Garrison v. Ringgold*, No. 19-cv-244-GPC (RBB), 2019 WL 5684401, at *2 (S.D. Cal. Nov. 1, 2019). As this presumption is unrebutted and Reay's anti-SLAPP motion fundamentally changed the "posture of the case," *Brown*, 722 F. Supp at 1155, the Court finds that Reay is the prevailing party and is entitled to attorneys' fees under California's anti-SLAPP statute.

### B.  Amount and Reasonableness

"Although an award of attorney[s'] fees is mandatory under the anti-SLAPP statute, the amount of such fees is discretionary." *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008). "The reasonableness of attorney[s'] fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and

expertise of counsel and the amount of time involved." *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 448 (2002). "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Ketchum*, 24 Cal. 4th at 1138.

"The customary method of determining reasonable attorneys' fees, including fee awards on anti-SLAPP motions to strike, is known as the 'lodestar' method." *Title Tracy Anderson Mind & Body, LLC v. Roup*, No. 2:22-cv-04735-PSG (Ex), 2023 WL 6890744, at *2 (C.D. Cal. Sept. 11, 2023) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)). "The lodestar method involves multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (citation modified). "The resulting lodestar figure is presumptively reasonable." *Id.* (citation modified).

Reay asks for the following fees relating to her anti-SLAPP motions:

| Attorney/Paralegal | Lodestar Hours | Lodestar Rate | Lodestar Total |
|---|---|---|---|
| J. Lewis (Attorney) | 6.8 | $800.00 | $5,440.00 |
| K. Dayton (Attorney) | 23.5 | $450.00 | $10,575.00 |
| T. Cotter (Attorney) | 36.8 | $300.00 | $11,040.00 |
| J. Ebbens (Paralegal) | 13.6 | $300.00 | $4,080.00 |
| N. Komai (Paralegal) | 8.2 | $250.00 | $2,050.00 |
| J. Bell (Paralegal) | 2.4 | $250.00 | $600.00 |
| **TOTAL** | **91.3** | | **$33,785.00** |

(Mot. 12.) Reay asks the Court to apply a 1.5 lodestar multiplier on the attorneys' fees, which would bring the total attorneys' fees to $50,677.50. (*Id.*) Reay also seeks the following fees for the preparation of this Motion:

| Attorney/Paralegal | Lodestar Hours | Lodestar Rate | Lodestar Total |
|---|---|---|---|
| J. Lewis (Attorney) | 1.0 | $800.00 | $800.00 |
| K. Dayton (Attorney) | 3.0 | $450.00 | $1,350.00 |
| J. Ebbens (Paralegal) | 0.5 | $300.00 | $150.00 |
| J. Bell (Paralegal) | 3.0 | $250.00 | $750.00 |
| **TOTAL** | **7.5** | | **$3,050.00** |

(*Id.*)

The Court first examines the reasonableness of the hourly rates and hours expended, before turning to Reay's request for a multiplier.

1. *Hourly Rates*

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). If the moving party fails to provide affidavits from "local attorneys or from a fee expert" to show that the requested rates match the prevailing market rates, the district court may rely on its "own knowledge of customary rates" and its "familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

In support of Reay's attorneys' fees request, her counsel Jeffrey Lewis attaches a declaration detailing his legal experience and citing several cases in which courts have found his rate—and the rates of his fellow colleagues—reasonable.[4] (Decl. Jeffrey Lewis ISO Mot. ("Lewis Decl.") ¶¶ 14–15, Dkt. No. 58-1.) The Court finds

---

[4] Lewis also cites the Laffey Matrix as evidence of the reasonableness of his, his associates', and his paralegals' rates. (Lewis Decl. ¶ 18.) However, the Ninth Circuit has expressed skepticism, if not outright rejection, of the Laffey Matrix. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.") Thus, the Court declines to consider the Laffey Matrix in its analysis.

this evidence persuasive and first concludes that Lewis's rate—$800.00—is reasonable. Lewis is an experienced attorney, having litigated anti-SLAPP and other civil litigation matters for many years. (Lewis Decl. Ex. 2 ("Lewis CV"), Dkt. No. 58-3.) Moreover, multiple state courts have likewise found Lewis's rates reasonable. (Lewis Decl. ¶ 15.)

Lewis's associates' rates are also reasonable. First, Kyla Daytons' rate—$450.00—while high, is not unreasonable. She is a third-year associate with experience litigating anti-SLAPP cases, (*id.* ¶ 10), and based on the Court's "own knowledge of customary rates" and "familiarity with the legal market," *Ingram*, 647 F.3d at 928, $450.00 is a reasonable rate for an attorney of her experience. Moreover, at least one state court has previously found her previous rate of $400.00 reasonable. (*Id.* ¶ 15(t).) In the absence of any opposition, the Court finds Dayton's hourly rate of $450.00 reasonable.

Second, the Court also finds Tim Cotter's hourly rate—$300.00—reasonable. While Cotter is a newer attorney, the Court leans on its "own knowledge of customary rates" and "familiarity with the legal market," *Ingram*, 647 F.3d at 928, and finds that $300.00 is a reasonable hourly rate for a first-year attorney with anti-SLAPP experience tasked with drafting the bulk of the motions, (*see* Lewis Decl. ¶ 11; *Id.* Ex. 1 ("Timesheets"), Dkt. No. 50-2.) Thus, in the absence of any opposition, the Court finds that Coffey's rate of $300.00 an hour is reasonable.

The Court does not find that Reay has met her burden to demonstrate that Jason Ebbens's hourly rate of $300.00 is reasonable. While Ebbens has considerable experience as a litigation paralegal, (Lewis Decl. ¶ 12), there is no evidence that any court has found his requested hourly rate reasonable. Instead, the cases Reay's counsel cites approved hourly rates for Ebbens only up to $225.00. (*See id.* ¶¶ 15(k), 15(p), 15(r)–(s).) This, combined with the Court's "own knowledge of customary rates," and "familiarity with the legal market," *Ingram*, 647 F.3d at 928, leads to a downward adjustment of Ebben's hourly rate to $225.00. As Nora Komai and

Jammie Bell both have less experience than Ebbens, the Court also adjusts their hourly rates to $200.00 and $150.00, respectively.

### 2. Hours Expended

In analyzing the reasonableness of hours expended, the Court must examine detailed time records to determine whether the hours claimed are adequately documented and whether any of them are unnecessary, duplicative, or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)), *op. am. on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). The trial court, due to its familiarity with the case, is in the best position to evaluate the reasonableness of the hours requested. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008).

Reay's counsel attaches detailed time records spanning preparation of both the anti-SLAPP motions and the instant Motion. (Timesheets.) The Court has thoroughly reviewed the records and finds that some downward adjustments are necessary. First, some of the hours billed do not appear to encompass proceedings "directly related to [Reay's] motion to strike." *Grant & Eisenhofer, P.A. v. Brown*, No. 2:17-cv-05968-PSG (AFMx), 2018 WL 4945303, at *1 (C.D. Cal. May 14, 2018). For example, Dayton's descriptions include "draft[ing] stipulation to extend time," "[r]eview[ing] and revis[ing] settlement letter template," and "[r]eview[ing] status of electronic filing for Motion to Dismiss Third Amended Complaint filed by Defendant LA County," and (Timsheets 3, 6, 10.)[5] Similarly, Lewis's descriptions include "draft letter to plaintiff's counsel," "video conference with county counsel" and "[e]xchange emails with county counsel," none of which clearly apprise the Court that this work was directly related to a motion to strike. (*Id.* at 2–3.) Thus, the Court subtracts **2.7 hours** from Dayton's hours billed and **1 hour** from Lewis's hours billed.

Second, some of Cotter's hours are "unnecessary, duplicative, or excessive." *Chalmers*, 796 F.2d at 1210. Specifically, time spent on Alvarez's Fourth Amended

---

[5] When citing to the Timesheets, the Court refers to the CM/ECF pagination.

Complaint, which the Court eventually struck, (Min. Order, Dkt. No. 51), are excessive considering Alvarez improperly filed that pleading and Reay's counsel recognized this immediately, (*See* Timesheet 13; Mot. Strike 9 n.1.) Thus, the Court subtracts **3.8 hours** from Cotter's hours.

Third, some of the paralegals' time entries are too vague. For example, over twenty of Komai's time entries are some variation of "[r]eview interoffice communication." (Timesheets 11–12.) These entries render the Court "unable to discern how the time spent is attributable to the case at hand." *See Santiago v. Equable Ascent Fin.*, No. C 11-3158 CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013). This is especially true with a paralegal's time, as the Court cannot award time for clerical work. *See Krapf v. Nationwide Credit Inc.*, No. 8:09-cv-00711-JVS, 2010 WL 4261444, at *5 (C.D. Cal. Oct. 21, 2010). Thus, the Court subtracts **5.7** hours from Komai's hours. The Court also subtracts **1 hour** from Bell's hours as his time entry, "[f]inalize anti-SLAPP," is simply too vague. (Timesheets 1.)

Finally, as noted above, fees cannot be properly awarded for clerical work, including "electronic filing, organization and scanning of documents, calendaring, and preparing proofs of service." *Krapf*, 2010 WL 4261444, at *5. Several of Ebbens' time entries include both "finalizing" and "filing", which is either too vague or a secretarial task. Thus, the Court subtracts **4.1** hours from Ebbens' hours.

In sum, the lodestar calculations for both the anti-SLAPP motions and the instant Motion, are as follows:

| Attorney/Paralegal | Lodestar Hours | Lodestar Rate | Lodestar Total |
|---|---|---|---|
| J. Lewis (Attorney) | 6.8 | $800.00 | $5,440.00 |
| K. Dayton (Attorney) | 23.8 | $450.00 | $10,710.00 |
| T. Cotter (Attorney) | 33.0 | $300.00 | $9,900.00 |
| J. Ebbens (Paralegal) | 10.0 | $225.00 | $2,250.00 |
| N. Komai (Paralegal) | 2.5 | $200.00 | $500.00 |
| J. Bell (Paralegal) | 4.4 | $150.00 | $660.00 |
| **TOTAL** | **80.5** | | **$29,460.00** |

3. <u>Lodestar Multiplier</u>

Reay asks the Court to apply a 1.5 multiplier. (Mot. 11–12.) To determine whether a multiplier is warranted, the Court must determine various factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132.

The Court does not question the skill of Reay's counsel. However, it is undeniable that this case did not involve novel or complex issues. Two of Reay's motions—her second Motion to Strike and the instant Motion—went unopposed, so she had no arguments to counter. Reay even admits that Reay's second motion to strike was "very similar in substance to [her] prior anti-SLAPP motion." (Mot. Strike 9.) Moreover, nothing in the record suggests that this litigation precluded other employment opportunities for Reay's counsel. *See Ketchum*, 24 Cal. 4th at 1132. Thus, the Court declines to apply a multiplier in this case.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Reay's Motion for Attorneys' Fees, (Dkt. No. 58), and **AWARDS $29,460.00** in attorneys' fees to Jeff Lewis Law, APC. Alvarez shall render payment no later than **FEBRUARY 9, 2026**.

**IT IS SO ORDERED**.

December 11, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**